99 F.3d 400
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee
v.
Cherifo BODIAN, also known as Sherif B., Defendant-Appellant.
 No. 95-1275.
 United States Court of Appeals, Second Circuit.
 Dec. 6, 1995.
 
 APPEARING FOR APPELLEE: NANCY L. KESTENBAUM, Assistant United States Attorney for the Southern District of New York, New York, NY.
 APPEARING FOR APPELLANT: PHILIP L. WEINSTEIN, The Legal Aid Society, Federal Defender Div., New York, NY.
 S.D.N.Y.
 AFFIRMED IN PART, REVERSED IN PART.
 This cause came to be heard on the transcript of record from the United States District Court for the Southern District of New York and was argued by counsel.
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby affirmed in part and reversed in part.
 After a jury trial before the District Court for the Southern District of New York (Duffy, J.), defendant Cherifo Bodian was convicted of credit card fraud and conspiracy to commit credit card fraud, under 18 U.S.C. § 1029(a)(2) and 18 U.S.C. § 371.
 
 
 1
 In addition to Bodian, the conspiracy participants included Jon Diallo, the mastermind, and Celeste Jackson, a girlfriend of Diallo's. Diallo and Bodian created fictitious businesses and enrolled their businesses with American Express as official "Service Establishments" that were authorized to accept the American Express card. Diallo convinced Jackson to let them use her home address as the mailing address for some of the businesses. Bodian and Jackson, who both worked at retail stores, then fraudulently collected American Express card account numbers from the customers they served. The scheme was completed when Bodian and Diallo sent payment slips to American Express for fictitious purchases on these accounts. From the account numbers Bodian collected from his store, $42,229.19 in phony purchases were charged to American Express. Overall, $257,115.30 in phony payment slips were so charged.
 
 
 2
 American Express sent checks to the fictitious businesses, reimbursing them for the phony payments, until American Express detected fraud and halted payments. Bodian deposited some of these checks, totalling over $36,000, in his bank account. Overall, the conspirators received $192,675.83 in reimbursement checks from American Express.
 
 
 3
 Bodian raises two issues on appeal, the first regarding the admissibility of several statements at trial, and the second regarding his sentence.
 
 1. Admissibility
 
 4
 At Bodian's trial, Jackson testified that she overheard statements made by Diallo and Bodian concerning Bodian's involvement in the conspiracy. Bodian moved to have Jackson's testimony regarding these out-of-court statements excluded as inadmissible hearsay. The court ruled the testimony admissible. On appeal, Bodian challenges four or so of these statements. The Government contends that each is admissible, either as an admission, under Rule 801(d)(2)(A) of the Federal Rules of Evidence, or as a statement of a coconspirator made "in furtherance of the conspiracy," under Rule 801(d)(2)(E). We agree with the Government.
 
 
 5
 The first two challenges are to Jackson's testimony that Diallo told her: (a) that Bodian, like her, was obtaining card account numbers from his store; and (b) that Bodian had a friend at his bank who was handling the American Express reimbursement checks that Bodian deposited there. For a statement to be "in furtherance of the conspiracy," it must
 
 
 6
 prompt the listener ... to respond in a way that promotes or facilitates the carrying out of a criminal activity.... [This] include[s] statements that provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy.
 
 
 7
 United States v. Maldonado-Rivera, 922 F.2d 934, 958-59 (2d Cir.1990), cert. denied, 511 U.S. 1211 (1991). Both statements would tend to reassure Jackson concerning the conspiracy: another supplier of cardmember numbers would make it harder for American Express to track down their source and would relieve Jackson's concern about having the scheme traced to her place of employment; Bodian's supposed friend at the bank would relax Jackson concerning the success of the scheme. These statements thus served to keep her in the conspiracy. Since Jackson helped make the fraudulent scheme possible, statements that helped convince her to stay in the conspiracy were "in furtherance of the conspiracy." Therefore, neither of these statements is hearsay.
 
 
 8
 The third statement was part of Jackson's testimony about a conversation she had with Diallo, in which she renewed her protests concerning the continued use of her address for the fictitious businesses. Diallo told her (she testified) that Bodian was to blame for continuing to use her address, and that Bodian was "greedy." By blaming the "greedy" Bodian, Diallo assured Jackson that he had not betrayed her and that she could continue to trust him. This statement from Diallo thus tended "to induce [Jackson's] assistance, [and] serve[d] to foster trust and cohesiveness" between the two of them. See id. Moreover, this statement, like the first two, helped convince her to stay in the conspiracy. It is therefore admissible as a statement made in furtherance of the conspiracy.
 
 
 9
 The fourth statement was Jackson's testimony that she overheard Diallo and Bodian talking about depositing one of the American Express reimbursement checks through a bank ATM machine. Bodian argues on appeal that Jackson merely overheard Diallo's end of a telephone conversation he was having with Bodian. The Government successfully refutes this by pointing to a passage in Jackson's testimony which demonstrates that her recollection of having heard the conversation "in person" signified that she was present for the face-to-face conversation between Diallo and Bodian. As a result, Bodian's statement about making deposits through the ATM machine is admissible under Rule 801(d)(2)(A), since it constitutes an admission.
 
 2. Sentence
 
 10
 Bodian argues--and the Government concedes--that his sentence should be vacated and the case remanded for a new sentencing determination.
 
 
 11
 The district court calculated Bodian's offense level based on the total amount of phony purchases for which the conspirators sent receipts to American Express, a total of $257,115.30. Based on this figure, Bodian's offense level was 16, giving him a sentencing range of 21 to 27 months imprisonment. He was sentenced to 27 months.
 
 
 12
 Under § 1B1.3(a)(1)(B) of the Sentencing Guidelines, however, Bodian can only be held responsible for the acts of his coconspirators if they were (1) within the scope of the conspiracy agreement and (2) reasonably foreseeable. See United States v. Studley, 47 F.3d 569, 574 (2d Cir.1995). The district court must make explicit findings on these issues. Id. The court here made no such findings. Thus, the record does not support the conclusion that the correct offense level for Bodian was 16. Bodian's sentence is vacated, and the case is remanded to determine the appropriate offense level under the Guidelines.
 
 
 13
 A remand is also required on the amount of restitution ordered by the district court. The court ordered Bodian to reimburse American Express for the total amount it lost, $192,675,83. Under 18 U.S.C. § 3664(a), the district court must consider certain factors before it imposes restitution, including the defendant's financial resources. We have held that this provision requires at least "an affirmative act or statement allowing an inference that the district court in fact considered the defendant's ability to pay." United States v. Soto, 47 F.3d 546, 551 (2d Cir.1995). In imposing Bodian's sentence, the district court judge said nothing about this, other than to impose the sentence. As the Government concedes, therefore, the sentence must be remanded for the district court to consider the factors set out in § 3664(a), including Bodian's ability to pay any restitution award.
 
 
 14
 We affirm Bodian's conviction, vacate his sentence, and remand to the district court for proceedings consistent with this opinion.